UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
UNITED STATES OF AMERICA,

                                                    20-cr-301 (PKC)

            -against-                               ORDER

ALEX MELENDEZ,

                        Defendant.
------------------------------------------------------------x

CASTEL, U.S.D.J.

        Alex Melendez moves for a five-month sentence reduction pursuant to
Amendment 821 to the Sentencing Guidelines, which went into effect on November 1, 2023 and
applies retroactively. (ECF 364, 377.) The Department of Probation issued a Supplemental PSR
dated December 29, 2023 (the "Supplemental PSR"). (ECF 357.) It concluded that Melendez is
eligible for a sentence reduction under Part A of Amendment 821, which provides for an
adjustment of status points for offenders who committed an offense while under a criminal
justice sentence.

        Melendez originally filed the motion on his own behalf pro se. (ECF 364.) The
Court appointed counsel under the Criminal Justice Act to represent Melendez. (ECF 366.) The
government opposed the motion, and, through his attorney, Melendez's submission in reply set
forth a more fully developed argument in support of his application. (ECF 368, 377.)

        Because the section 3553(a) factors weigh heavily against a modification of the
original 65-month sentence, Melendez's motion for a sentence modification based on
Amendment 821 will be denied.

On July 27, 2021, Melendez pleaded guilty to one count of conspiring to distribute and possessing with intent to distribute substances containing a detectable amount of cocaine in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C) and one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (ECF 153.)

At the conclusion of a sentencing hearing on February 15, 2022, the Court sentenced Melendez principally to 65 months' imprisonment on Count One and 65 months' imprisonment on Count Two, to run concurrently. (Sentencing Tr. 41 (ECF 267); ECF 238.) The Final Presentence Investigation Report (the "PSR") calculated a total offense level of 18 and a criminal history category of III, with a Guidelines range of 33 to 41 months. (PSR ¶ 118 (ECF 163).) The plea agreement between the parties stipulated to a Guidelines range of 41 to 51 months' imprisonment based on a total offense level of 18 and a criminal history category of IV. (PSR ¶ 119.) The Court adopted the Guidelines calculation contained in the PSR. (Sentencing Tr. 8.) As will be discussed, the Court concluded at the sentencing hearing that the nature and circumstances of Melendez's offense warranted an above-Guidelines sentence of 65 months.

The Supplemental PSR concluded that pursuant to Amendment 821, Melendez is eligible for a status-point recalculation because he received an enhancement for committing his offenses while under a criminal justice sentence. (Supp. PSR at 2-3.) Under the amended Guidelines analysis, Melendez has a total offense level of 18 and a criminal history category of II, with a Guidelines range of 30 to 37 months' imprisonment. (Supp. PSR at 3.) The government does not challenge the amended Guidelines analysis and the Court adopts the amended Guidelines range.

Melendez urges that the Court should exercise its discretion to reduce his sentence by five months, for a total term of imprisonment of 60 months. (ECF 377.) Melendez notes that

he has demonstrated a strong work ethic while in BOP custody, availed himself of educational programming and obtained a GED.  (Id.)  He notes that a sentence of 60 months would still exceed the Guidelines range.  (Id.)  Melendez annexes a letter from his wife, Victoria, who states that she has purchased a home in the small town of Mexico, NY, in hopes of maintaining a more stable living environment.  (Id.)  Ms. Melendez also describes the benefits that a two-parent household would present for Melendez's three sons, who range in age from 10 to 19.  (Id.)

Melendez's motion is governed by 18 U.S.C. § 3582(c)(2), which permits a court to modify a term of imprisonment if "a sentencing range . . . has subsequently been lowered by the Sentencing Commission . . . ."  The Court must consider the factors set forth at 18 U.S.C. § 3553(a), and any sentence reduction must be "consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(2); see also U.S.S.G. § 1B1.10, Application Note (1)(B)(i) ("the court shall consider the factors set forth in 18 U.S.C. § 3553(a) in determining: (I) whether a reduction in the defendant's term of imprisonment is warranted; and (II) the extent of such reduction . . . .").  "The authorization of such a discretionary reduction does not otherwise affect the lawfulness of a previously imposed sentence, does not authorize a reduction in any other component of the sentence, and does not entitle a defendant to a reduced term of imprisonment as a matter of right."  U.S.S.G. § 1B1.10, Background.  Thus, a sentence will not be modified if the section 3553(a) factors weigh against the application.  See, e.g., United States v. Akintola, 2024 WL 1555304, at *13 (S.D.N.Y. Apr. 10, 2024) (Failla, J.) (collecting cases); United States v. Lucas, 2024 WL 3718658, at *3 (E.D.N.Y. Aug. 8, 2024) (denying Amendment 821 modification to defendant who committed underlying offense ten months after release from custody).

Melendez's offense conduct is recounted in the PSR.  In the early-morning hours of April 18, 2020, Melendez and his associates attempted to sell what was purported to be one kilogram of cocaine for $33,000, but was in truth, a substance consisting of "sham drugs."  (PSR ¶ 14.)  Melendez and his associates had previously provided a sample of 10 grams of cocaine to the prospective purchasers.  (PSR ¶ 12.)  During the course of this transaction, Melendez obtained a white plastic bag that contained approximately $33,000 in narcotics proceeds and the purchasers were given a black backpack containing the substance designed to appear to be narcotics.  (PSR ¶ 15.)

After entering a vehicle, Melendez held up the white plastic bag, which law enforcement believes was a signal to his associates that the transaction was complete.  (PSR ¶ 16.)  The vehicle carrying Melendez and a second vehicle belonging to an associate then attempted to speed away.  (PSR ¶ 16.)

At that point, one of the purchasers of the "sham drugs" discharged a firearm toward the two vehicles.  (PSR ¶ 16.)  Melendez successfully fled the scene, leaving behind one of his associates, Jorge Cabrera.[1]  (PSR ¶ 18.)  Phone records reflect several attempts by Melendez to contact Cabrera in the minutes after the transaction and the shooting.  (PSR ¶ 21.)  In fact, Cabrera had suffered injuries from a bullet lodged near his spine, and would die on May 14, 2020.  (PSR ¶¶ 10-11.)

On May 9, 2020, Melendez was a passenger in a vehicle that was subject to a traffic stop by NYPD officers.  (PSR ¶ 23.)  That same vehicle was subject to a second traffic stop by NYPD on May 13, 2020, and again, Melendez was a passenger.  (PSR ¶ 24.)  In that second traffic stop, officers recovered a firearm stored in a compartment in the floor of the

---

[1] The PSR identifies Cabrera as "Victim-1."

passenger-side seat.  (PSR ¶ 24.)  The NYPD took Melendez into custody.  (PSR ¶ 24.)  After being advised of his <u>Miranda</u> rights, Melendez denied knowledge of the firearm recovered in the May 13 stop but also said that law enforcement failed to find a firearm present in the vehicle during the May 9 stop.  (PSR ¶ 25.)  Subsequent testing found Melendez's DNA on the firearm. (PSR ¶ 26.)  Further investigation found that the firearm was a Ruger .380 caliber pistol that had been transported in interstate and foreign commerce.  (PSR ¶ 27.)

At the conclusion of a sentencing hearing on February 15, 2022, the Court sentenced Melendez principally to 65 months' imprisonment on Count One and 65 months' imprisonment on Count Two, to run concurrently.  (Sentencing Tr. 41; ECF 238.)  In its statement of reasons, the Court began by noting that section 3553(a) requires a court to consider the nature and circumstances of the crime, with the advisory Sentencing Guidelines providing some guidance within the statutory maximum and minimum.  (Sentencing Tr. 36.)

The Court noted that phone records reflected that Melendez had been in communication with the purchasers of the sham drugs approximately an hour before the shooting.  (Sentencing Tr. 36-37.)  It noted that Melendez attempted to call Cabrera afterward but did not call 911.  (Sentencing Tr. 37.)

The Court observed that there is a strong risk of violence inherent in any scheme to sell sham drugs:

> It is foreseeable that a person who is ripped off in a drug transaction would not go to law enforcement.  That was known by Mr. Melendez and, presumably, by Mr. Cabrera. And, in that circumstance, one would anticipate violent retaliation, if violent retaliation was possible.  It's the nature of drug-dealing.  The only justice that the person who felt wronged by being ripped off of $33,000 in a drug transaction could get would be through some form of violent retaliation.  We see that in this courthouse all the time with retaliations for stash house robberies and the like, and, unfortunately, that is a common consequence of drug trafficking.

> In this particular instance, the calculation was, if Mr. Melendez and
> Mr. Cabrera could get away from the scene, it would be very
> difficult to violently retaliate against them because you wouldn't
> know where to go to violently retaliate against them.  So it was
> imperative that they get away from the scene, and, sadly, the
> defendant's associate did not get away from the scene, and suffered
> and died.

(Sentencing Tr. 38-39.)  The Court observed that the Guidelines and its accompanying policy

statements and commentary did not adequately account for the circumstances of Melendez's

offenses.  (Sentencing Tr. 39.)

The Court also recounted a prior offense of Melendez, in which he agreed to

a purchase price in a marijuana transaction, subsequently demanded a lower price, and then shot

the victim in the upper left thigh when the victim refused to Melendez's price demand.

(Sentencing Tr. 40; see also PSR ¶ 62.)  Melendez was taken into custody by New York

authorities for the offense, granted parole, and committed the offense conduct in this proceeding

while under a term of parole.  (Sentencing Tr. 40; PSR ¶¶ 62, 64.)  The Court also noted

Melendez's inconsistent statements about his history of drug use and his willingness to receive

substance-abuse treatment during his term of imprisonment.  (Sentencing Tr. 40-41.)

The Court also noted that Melendez had a difficult upbringing and suffered from

mental-health issues, and that the Court took account of these considerations in sentencing.

(Sentencing Tr. 41.)

The Supplemental PSR states that Melendez has had four disciplinary infractions

while in BOP custody, including for fighting with another person, phone abuse, disruptive

conduct and destruction of property valued at $100 or less.  (Supp. PSR at 3.)  Melendez has

been punished with the loss of good-time credit, among other sanctions.  (Id.)  Melendez

describes these infractions as "relatively minor, common transgressions" that "were resolved

with minor punishments," describing them as "consistent with the chaotic prison environment and not reflective of [his] character or rehabilitation."  (ECF 377 at 4.)

   The Court concludes that the section 3553(a) factors weigh against a modification of Melendez's sentence, and his application will be denied.  As discussed, Melendez was a central participant in a scheme to sell sham drugs, which posed a high risk of violence and resulted in the shooting death of Cabrera.  Less than a month after that shooting, Melendez was taken into law enforcement custody while in a car with a firearm that had his DNA on it.  In a prior offense, Melendez shot a narcotics seller in a pricing dispute that he initiated, and Melendez was on parole for that offense at the time of his offense conduct in this case.  While the Court is hopeful that Melendez has sincerely described his efforts to benefit from the educational programming available through the BOP, and has considered his expected relocation to a small town upon release from custody, this optimism is mitigated by Melendez's disciplinary infractions and his attempt to minimize their seriousness in his application.

   Section 3553(a) requires the Court to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the seriousness of the offense, respect for the law, just punishment, deterrence and the need to protect the public.  These factors weigh heavily in favor of maintaining Melendez's original 65-month sentence.

   Melendez's motion for a sentence modification based on Amendment 821 of the Guidelines is therefore DENIED.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated:  New York, New York
        September 27, 2024